IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:10CR233 |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| LEONARD DAN, | ) ) | |
| Defendant. | ) ) | |

    This matter is before the Court on the Findings and Recommendation (Filing No. 28) issued by Magistrate Judge Thomas D. Thalken recommending that the motion to suppress (Filing No. 19) filed by the Defendant, Leonard Dan, be granted. The government filed a statement of objections to the Findings and Recommendation and a supporting brief (Filing Nos. 29, 30) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a).

    Dan is charged in a one-count Indictment with being a felon in possession of a firearm. He seeks the suppression of evidence obtained as a result of his April 1, 2010, stop, arrest, and search.

    Following an evidentiary hearing, Judge Thalken issued written findings of fact and conclusions of law and a Findings and Recommendation. Judge Thalken concluded: the encounter inside the restaurant was not consensual; officers had no reasonable articulable suspicion that criminal activity might be afoot; no reasonable suspicion supported his stop or detention; when Dan answered "yes" to officers' question asking whether he had a gun, and he moved as if to retrieve a gun, officers had justification to handcuff him; and Dan's statement that he possessed drugs gave officers probable cause to arrest him. Judge Thalken therefore recommends that, although officers acted reasonably in handcuffing and

arresting Dan, the stop and detention were unconstitutional and the motion to suppress should be granted.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

Judge Thalken provided a detailed account of the events surrounding the stop, detention, and arrest. The Court has considered the transcript of the hearing conducted by Judge Thalken. Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge Thalken's factual findings in their entirety.

Briefly, on April 1, 2010, officers were conducting a Project Safe Neighborhoods warrant sweep. Officer Bruck was in a marked cruiser with two other officers heading west at the intersection of 33rd and California Streets in Omaha, Nebraska. The officers saw a person exit the J&J grocery on the southwest corner, look at the cruiser, walk back in the store, and watch the cruiser from inside the store. Officers thought this behavior was odd, so they turned around and headed east toward the intersection. They saw the man, later identified as Dan, walking from the store to the California Taco restaurant on the southeast corner. Officers saw Dan hurriedly walk into the restaurant after seeing them again.

The three officers, armed and in various items of marked police clothing, approached Dan as he was ordering food at the counter and asked his name, date of birth, and age.

The age did not correspond with the date of birth. Officers then asked Dan to step outside because they believed that Dan gave them false information. Before they left the restaurant, Dan yelled that the "police were arresting another nigger." (Tr. 10:23.) As they were exiting, Bruck asked Dan if he had any weapons. Dan answered yes, he had a gun, and started reaching toward his waistband with his right hand. Dan was handcuffed. He had a loaded gun on the right side of his waistband. When the gun was found, Dan also stated that he had crack "on him." (Tr. at 12:21.) Together with the baggie, the drugs weighed 2.6 grams. Dan also had $654 in various denominations. While being transported to the police precinct for further interview, Dan stated without being questioned that he was a crack dealer and needed the gun for protection.

## ANALYSIS

The government objects to Judge Thalken's conclusions that the officers had no reasonable articulable suspicion that criminal activity might be afoot and that Dan was detained in the restaurant and as he was taken out of the restaurant.

### *Reasonable Articulable Suspicion*

Judge Thalken stated:

> Although the questioning [inside the restaurant] did not require **Miranda** warnings, the three armed officers approached Dan in a restaurant as Dan stood at the counter to place an order. The restaurant was not busy. Dan responded to the questions posed. However, no reasonable person would feel free to disregard the police and go about his business. Dan "complied" with the officer's directive to step outside the restaurant and was "escorted" outside by the officers. Dan's outburst that the officers were "arresting another nigger" belies a voluntary accompaniment of the officers. Therefore, the encounter was not consensual. Similarly, the officers had no reasonable suspicion supported by articulable facts that criminal activity might be afoot. The fact that they saw an individual go into a grocery store, look out a window, and hurry across the street when a vehicle was

approaching does not provide reasonable suspicion of any criminal activity.

(Filing No. 28, at 5.)

The government argues that because Dan returned to the store, did not shop at the store upon his return,[1] left the store and walked to the restaurant, hesitated with his answers,[2] and "clearly provided false information" (Filing No. 30, at 3), a reasonable articulable suspicion that criminal activity might be afoot existed. The government's argument is not supported by case law.

The Court agrees with Judge Thalken's assessment of the situation. Dan's conduct in returning to the store, watching the police, and walking to the restaurant, does not appear unusual upon seeing a marked police cruiser with three officers at the intersection of 33rd and California Streets. His initial responses of "huh" to two questions, his offering of a conflicting age and date of birth, could have been due many factors, including nervousness due to questioning by three armed police officers. The Court agrees that a reasonable articulable suspicion of criminal activity was lacking, and the government's objection is denied.

### *Consensual Encounter*

The government argues that Dan voluntarily left the restaurant with officers and therefore the encounter was consensual. The government asserts that "[p]opping off that 'the police were arresting another nigger' is evidence that the [sic] Dan was an unstable

---

[1] The government's asserted fact that Dan did not buy anything when he returned to the store is not supported by the evidence. It is unknown whether he purchased anything upon his return to the store.

[2] The evidence is that Dan responded "huh" to two questions before answering.

loud mouth who was trying to incite the other customers, not a statement of the law that he was in custody." (Filing No. 30, at 3.) The government's argument is not supported by case law. The Court agrees with Judge Thalken that the statement, as well as the factors surrounding the encounter, show that Dan did not voluntarily "step outside" with the officers.

## CONCLUSION

For the reasons discussed, the Findings are Recommendation is adopted, and the government's objections are denied.

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (Filing No. 28) is adopted in its entirety;

2. The government's objections to the Findings and Recommendation (Filing No. 29) are denied;

3. The Defendant's motion to suppress (Filing No. 19) is granted.

DATED this 10th day of November, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge